CT Corporation

**Service of Process Transmittal**
04/19/2019
CT Log Number 535327874

TO: Stephanie Youngman
Johnson & Johnson
1 Johnson and Johnson Plz
New Brunswick, NJ 08933-0002

RE: **Process Served in Delaware**

FOR: Johnson & Johnson Consumer Inc.  (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lenel Farmer and Christopher Farmer, Pltfs. vs. Johnson & Johnson, et al., Dfts. // To: Johnson & Johnson Consumer, Inc., etc. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Proof(s), Complaint, Certificate(s), Counsel |
| **COURT/AGENCY:** | Providence/Bristol Superior Court, RI Case # PC20193919 |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury - Johnson & Johnson's Baby Powder and Shower to Shower |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/19/2019 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | John E Deaton The Deaton Law Firm 450 North Broadway East Providence, RI 02914 401-351-6400 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/19/2019, Expected Purge Date: 04/24/2019 |
| | Image SOP |
| | Email Notification,  RA-JJCUS LDSOP  RA-JJCUS-LDSOP@its.jnj.com |
| | Email Notification,  Amy McLaren  cls-ctsopsupport@wolterskluwer.com |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 N Orange St Wilmington, DE 19801-1120 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / MD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



Deaton Law Firm
450 North Broadway
East Providence, RI 02914
(401) 351-6400

**CERTIFIED MAIL**

7017 2620 0000 1856 1495

Johnson & Johnson Consumer, Inc. f/k/a
Johnson & Johnson Consumer Companies
THE CORPORATION TRUST COMPANY
CORPORATION TRUST CENTER
1209 ORANGE STREET
WILMINGTON, DE 19801

First
Mail



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2019-3919 |
| **Plaintiff**<br>Lenel Farmer<br><br>v.<br><br>**Defendant**<br>Johnson & Johnson | **Attorney for the Plaintiff or the Plaintiff**<br>John E Deaton |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>450 NORTH BROADWAY<br>EAST PROVIDENCE RI 02914 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>Johnson & Johnson Consumer, Inc. f/k/a<br>Johnson & Johnson Consumer Companies<br>THE CORPORATION TRUST COMPANY<br>CORPORATION TRUST CENTER<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 |

**TO THE DEFENDANT, Johnson & Johnson Consumer, Inc. fka Johnson & Johnson Consumer Companies, Inc.:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 3/18/2019. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)

STATE OF RHODE ISLAND AND ⚓ PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
| Lenel Farmer | PC-2019-3919 |
| v. | |
| **Defendant** | |
| Johnson & Johnson | |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Johnson & Johnson Consumer, Inc. fka Johnson & Johnson Consumer Companies, Inc., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____

Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

d in Providence/Bristol County Superior Court
mitted: 3/18/2019 11:56 AM
relope: 1975261
viewer: Lynn G.

1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 5 of 51 PageID #: 13

**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**PROVIDENCE**


**LENEL FARMER**                             :
**and CHRISTOPHER FARMER**                   :
    *Plaintiffs,*                           :
                                             :
                                             :
v.                                           :          Civil Action No:
                                             :
JOHNSON & JOHNSON; and                       :
JOHNSON & JOHNSON CONSUMER, INC.             :
F/K/A JOHNSON & JOHNSON CONSUMER             :
COMPANIES, INC.; and JOHNSON &               :
JOHNSON BABY PRODUCTS, INC.; and             :
IMERYS TALC AMERICA, INC. F/K/A              :
LUZENAC AMERICA, INC.                        :
                                             :
    *Defendants.*                          :
                                             :

## COMPLAINT

COMES NOW Plaintiffs Lenel Farmer and Christopher Farmer, by and through their

undersigned counsel, and for their cause of action against Defendants Johnson & Johnson,

Johnson & Johnson Consumer Companies, Inc., Johnson & Johnson Baby Products, Inc., Imerys

Talc America, Inc., f/k/a Luzenac America, Inc. ("Defendants"), state the following:

### Parties

1.    Plaintiffs Lenel Farmer ("Ms. Farmer") and Christopher Farmer ("Mr. Farmer"), are

competent, natural persons, older than age 18, and current resident of Coopersville, MI.

2.    Ms. Farmer regularly used articles or substances (hereinafter referred to as "Products")

that were manufactured for sale by the Defendants to dust her perineum for feminine hygiene

purposes from 1992 until 2001 as she was led to believe would be safe. This was an intended and

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

foreseeable use of the Johnson & Johnson Products based on their advertising, marketing, and labeling.

3.      On or around December, 2013 Ms. Farmer was diagnosed with ovarian cancer. At the time of her diagnosis, Ms. Farmer was thirty-nine (39) years old.

4.      Ms. Farmer developed ovarian cancer and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the researching, mining, milling, developing, testing, screening, treating, storing, manufacturing, producing, processing, promoting, supplying, distributing, marketing, purchasing, and selling of talcum powder.

5.      As a direct and proximate result of these injuries, Ms. Farmer has incurred medical expenses and endured pain, suffering and loss of enjoyment of life.

6.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey. At all relevant times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the Products. At all relevant times, Johnson & Johnson regularly transacted, solicited, and conducted business in the State of Rhode Island, including the marketing, promoting, selling, and/or distributing of the Products.

7.      Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey. At all relevant times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the Products. At all relevant times, Johnson & Johnson Consumer Companies, Inc. regularly transacted, solicited, and conducted business in the

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 7 of 51 PageID #: 15
elope: 1975261
/iewer: Lynn G.

State of Rhode Island, including the marketing, promoting, selling, and/or distributing of the Products.

8.      Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. have, at all relevant times, conducted continuous and systematic business in the State of Rhode Island and placed the Products in the stream of commerce with the knowledge and intent that these Products be sold in the State of Rhode Island, and be consumed by Rhode Island citizens and residents.

9.      At all relevant times, Defendant Johnson & Johnson Consumer Companies, Inc. has been a wholly-owned subsidiary of Defendant Johnson & Johnson.

10.     Defendant Johnson & Johnson Baby Products, Inc. is a Delaware corporation with its principal place of business in the State of New Jersey.

11.     At all relevant times, JOHNSON & JOHNSON BABY PRODUCTS, INC. (hereinafter described as "J&J Baby Products"), has been a wholly owned subsidiary of JOHNSON & JOHNSON, and has been directed by its parent company to manufacture, market, test, promote, sell, and/or distribute the Products. At all relevant times, J&J Baby Products was under the complete dominion of and control of Defendant Johnson & Johnson, and the agent and alter ego of Defendant Johnson & Johnson. Hereinafter, unless otherwise delineated, these three entities shall be collectively referred to as the "Johnson & Johnson Defendants."

12.     At relevant times, members of Johnson & Johnson Defendants maintained an office at 1300 Highland Corporate Drive, Woonsocket, RI.

13.     Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys Talc"), is a Delaware corporation with its principal place of business in the State of California. At all relevant times, Imerys Talc has maintained a registered agent in the State of Rhode Island. At all

:d in Providence/Bristol County Superior Court
:mitted: 3/18/2019 11:58 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 8 of 51 PageID #: 16

relevant times, Imerys Talc has been in the business of mining and distributing talcum powder for use in talcum-powder-based Products, including the Products. Imerys Talc created Luzenac America, Inc., and retains legal responsibility for all liabilities incurred when it was known as Luzenac America, Inc.

## Jurisdiction and Venue

14.     This Court has subject matter jurisdiction, pursuant to R.I. Gen. Laws § 8-2-14, because the amount in controversy exceeds ten thousand dollars ($10,000), exclusive of interests and costs.

15.     This Court has personal jurisdiction over the Defendants, pursuant to R.I. Gen. Laws § 9-5-33(a), as a foreign corporation with sufficient minimal contact with the state.  At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising Johnson & Johnson's Baby Powder and Shower to Shower Products.

16.     At all times relevant hereto, Defendants had offices in Rhode Island and/or regularly solicited and transacted business in Rhode Island and Providence County. In addition, the Defendants reasonably expected that its Baby Powder and Shower to Shower Products would be used or consumed in Rhode Island and Providence County.

17.     Jurisdiction is proper as to the Johnson & Johnson Defendants because Johnson & Johnson Consumer Inc. consented to jurisdiction in the State of Rhode Island by registering to do business in the State of Rhode Island. Johnson & Johnson maintains continuous, purposeful, and systematic contacts in the State of Rhode Island, including, but not limited to, the sale of talc

Filed in Providence/Bristol County Superior Court
Submitted: 3/18/2019 11:58 AM
Envelope: 1975261
Reviewer: Lynn G.

Case Number: PC-2019-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 9 of 51 PageID #: 17

Products to consumers in the State of Rhode Island and maintaining offices in Providence County, Rhode Island.

18.     Currently, Johnson & Johnson has 106 open job positions in Cumberland and Providence, RI, alone.[1] Along with varies upper-management level employees in Rhode Island.[2]

19.     Jurisdiction is proper as to Imerys Talc because 1) Imerys Talc consented to jurisdiction in the State of Rhode Island by registering to do business in the State of Rhode Island; 2) it is reasonable and foreseeable Imerys Talc's dangerous talc – contained in the Products - would be and were sold to consumers in Providence County, Rhode Island; and 3) Imerys Talc maintains continuous, purposeful, and systematic contacts in the State of Rhode Island, including, but not limited to, the sale of Products containing Imerys Talc's talcum powder.

20.     Pursuant to 9 R.I. Gen. Laws § 9-4-3, venue is proper against all Defendants if the action is brought against one Defendant that is found in the division or county in which the action was filed. In this case, Plaintiffs' action is brought against multiple Defendants that are found within this county.

21.     Venue is proper in this Court as, at all relevant times, Defendants conducted business in Providence County, Rhode Island, and tested, manufactured, labeled, licensed, marketed, distributed, promoted and/or sold the Products in the State of Rhode Island.

## Facts

22.     Talc, an inorganic mineral and magnesium trisilicate, is mined from the earth. Imerys Talc mined the talc contained in the Products.

---

[1] Reviewed Glassdoor website on March 2, 2017, https://www.glassdoor.com/Jobs/Johnson-and-Johnson-Cumberland-Jobs-EI_IE364.0,19_IL.20,30_IC1151254.htm
[2] Reviewed Wizbii website on March 2, 2017, https://en.wizbii.com/company/johnson-amp-johnson/job/shopper-marketing-and-insights-manager-job

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 10 of 51 PageID #: 18

23.    Talc is the main substance in talcum powders. The Johnson & Johnson Defendants

manufactured the Products. The Products are composed almost entirely of talc.

24.    At all relevant times, a feasible alternative to the Products has existed. Cornstarch is an

organic carbohydrate that is quickly broken down by the body with no known health effects.

Cornstarch powders have been sold and marketed for the same uses with nearly the same

effectiveness.

25.    Imerys Talc has continually advertised and marketed talc as safe for human use.

26.    Imerys Talc supplies customers with material safety data sheets for talc. These material

safety data sheets are supposed to convey adequate health and safety warning information to its

customers.

27.    Historically, "Johnson & Johnson's Baby Powder" has been a symbol of freshness,

cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants

advertised and marketed this product as the beacon of "freshness" and "comfort," eliminating

friction on the skin, absorbing "excess wetness" helping to keep skin feeling dry and

comfortable, and "clinically proven gentle and mild." The Johnson & Johnson Defendants

compelled women through advertisements to dust themselves with this product to mask odors.

The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use

every day to help feel soft, fresh, and comfortable."

28.    During the time in question, the Johnson & Johnson Defendants advertised and marketed

the Shower to Shower product as safe for use by women as evidenced in its slogan, "A sprinkle a

day keeps odor away," and through advertisements such as, "Your body perspires in more places

than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable

throughout the day." And "SHOWER to SHOWER can be used all over your body."

:d in Providence/Bristol County Superior Court
imitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 11 of 51 PageID #: 19

29.     In a recent press release, Johnson & Johnson announced that it would be opening a health technology center in Providence County, Rhode Island, filling about 75 jobs. The Center will create software applications for healthcare.[3] Steve Wrenn, Johnson & Johnson's Vice President/Chief Applications Officer, represented Johnson & Johnson during the press release.

30.     Ms. Farmer used the Products to dust her perineum for feminine hygiene purposes for over fifty (50) years. In September, 2000, Ms. Farmer was diagnosed with ovarian cancer.

31.     Ms. Farmer's use of the Products on her perineal area was the intended and foreseeable use of the Products based on the advertising, marketing, and labeling of the Products.

32.     In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

33.     In 1982, the first epidemiologic study was performed on talcum powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92 percent increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple, of Johnson & Johnson, visited and met with Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks, so that women can make informed decisions about their health.

34.     Since 1982, there have been about twenty-two (22) additional epidemiologic studies providing data on the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

---

[3] December 19, 2016 press release, http://www.providencejournal.com/news/20161219/johnson--johnson-to-open-technology-center-in-providence-add-75-jobs

ed in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
velope: 1975261
viewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 12 of 51 PageID #: 20

35.     In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

36.     In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrancy Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). The Johnson & Johnson Defendants and Imerys Talc were members of the CTFA and the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type within this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc. Members of the TIPTF edited scientific reports of the scientists hired by this group before the submission of these scientific reports to governmental agencies. Members of the TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc related to ovarian cancer.

37.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then-Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies, as far back as the 1960s, show "conclusively that the frequent use of talcum powder in the genital area poses a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study wherein Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter

:d in Providence/Bristol County Superior Court
:mitted: 3/18/2019 9:56 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 13 of 51 PageID #: 21

further stated that, each year, fourteen thousand (14,000) women die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that Johnson & Johnson withdraw talc Products from the market because of the alternative of cornstarch powders or, at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

38.     In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

39.     In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk in ovarian cancer in women from perineal use of talc. IARC found that sixteen 16 percent to 52 percent of women in the world used talc to dust their perineum and found an increased risk, of ovarian cancer in women talc users, ranging from 30 percent to 60 percent. IARC concluded with this "Evaluation:" "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." By definition, "limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

40.     In about 2006, the Canadian government, through The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer

causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

41.    In 2006, Imerys Talc began placing a warning on the Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the Products. These MSDS not only provided the warning information about the IARC classification, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc.

42.    In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc Products" to the FDA. The petition requested that the FDA immediately require cosmetic talcum powder Products to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian cancer.[4]

43.    In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc Products in that area.[5]

44.    Presently, the National Cancer Institute[6] and the American Cancer Society[7] list genital talc use as a "risk factor" for ovarian cancer.

---

[4] Cancer Prevention Coalition "Petition Seeking a Cancer Warning on Cosmetic Talc Products Products" submitted to the FDA on May 13, 2008, http://www.organicconsumers.org/articles/article_12517.cfm

[5] "Genital powder use and risk of ovarian cancer: a pooled analysis of 8,525 cases and 9,859 controls," *Cancer Prevention Research*, June 2013, http://cancerpreventionresearch.aacrjournals.org/content/early/2013/06/12/1940-6207.CAPR-13-0037.short.

[6] National Cancer Institute, Ovarian Cancer Prevention, http://www.cancer.gov/cancertopics/pdq/prevention/ovarian/Patient/page3

[7] American Cancer Society, Risk Factors for Ovarian Cancer, http://www.cancer.org/cancer/ovariancancer/detailedguide/ovarian-cancer-risk-factors

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 15 of 51 PageID #: 23

45.     The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." This pamphlet lists "Use of Talc (Baby Powder) in the Genital Area" as a "known" risk factor for ovarian cancer.[8]

46.     The Defendants had a duty to know and warn about the hazards associated with the use of the Products.

47.     The Defendants failed to inform its customers and end users of the Products of a known, catastrophic health hazard associated with the use of its Products.

48.     In addition, the Defendants procured and disseminated false, misleading, and biased information to the public regarding the safety of its Products and used influence over governmental and regulatory used influence over governmental and regulatory agencies to actively misinform the public.

49.     As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Ms. Farmer developed ovarian cancer, which required surgeries and treatments, and was otherwise injured in a personal and pecuniary nature.

## FEDERAL STANDARDS AND REQUIREMENTS

50.     Plaintiffs hereby incorporate the above paragraphs as if fully set forth herein.

51.     At all relevant times, Defendants had the obligation to comply with federal standards and regulations in the manufacturing, design, marketing, branding, labeling, distributing, and selling of the Products.

---

[8] Myths and Facts About Ovarian Cancer,
http://imaging.iibmmedica.com/cancernetwork/forpatients/pdfs/7_M&F%20Ovarian%20Cancer.pdf.

Filed in Providence/Bristol County Superior Court
Submitted: 3/18/2019 11:55 AM
Envelope: 1975261
Reviewer: Lynn G.

52. Defendants, each individually, *in solido*, and/or jointly, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

53. Defendants have or may have failed to comply with federal standards and requirements governing the manufacturing, designing, marketing, branding, and selling of the Products including, but not limited to, the following violations of sections and subsections of the United States Code and the Code of Federal Regulations:

 a. The Products are misbranded in violation of 21 U.S.C. § 362 because, among other things, its labeling is false or misleading.

 b. The Products are misbranded in violation 21 U.S.C. § 362 because words, statements, or other information required by or under authority of 21 U.S.C. § 362 are not prominently placed thereon with such conspicuousness and in such terms as to render this information likely to be read and understood by the ordinary person under customary conditions of purchase and use.

 c. The Products are misbranded in violation of 21 C.F.R. § 701.1 because these Products contain false or misleading representations that they are safe for daily application to all parts of the female body.

 d. Violating 21 C.F.R. § 740.1, the Products do not bear a warning statement to prevent a health hazard that may be associated with the Products, namely that the Products may cause ovarian cancer or a heightened risk of ovarian cancer when applied to the perineal area.

 e. The Products do not prominently and conspicuously bear a warning statement, in violation of 21 C.F.R. § 740.2, as to the risk of ovarian cancer caused by the use of the Products when applied to the perineal area, in such terms and design that it

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 8:56 AM
/elope: 1975261
/iewer: Lynn G.

CASE 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 17 of 51 PageID #: 25

is likely to be read and understood by the ordinary person under customary conditions of purchase and use.

f.   The Products, in violation of 21 C.F.R. § 740.10, do not conspicuously state on the Products' principal display panel that the safety of the Products have not been determined and/or that the safety of the Products' principal ingredients have not been determined.

54.   The Products are adulterated, in violation of 21 U.S.C. § 361, because, among other things, the Products contain a poisonous or deleterious substance which may render them injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual.

**COUNT I**
**Strict Liability For Failure To Warn**
**(All Defendants)**

55.   Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

56.   At all relevant times, Imerys Talc mined and sold talc, to the Johnson & Johnson Defendants, which it knew Johnson & Johnson was then packaging and selling to consumers as the Products and it knew that consumers of the Products were using it to powder their perineal regions.

57.   At all relevant times, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature, especially when used in a woman's perineal regions, of the talc it was selling to the Johnson & Johnson Defendants, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

58.     At all relevant times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the Products in the regular course of business.

59.     At all relevant times, Ms. Farmer used the Products to powder her perineal area, which is a reasonably foreseeable use.

60.     At all relevant times, all the Defendants in this action knew or should have known that the use of talcum powder-based Products in the perineal area significantly increases the risk of ovarian cancer, based upon scientific knowledge dating back to 1971.

61.     At all relevant times, including the time of sale and consumption, the Products, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because these Products failed to contain adequate warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the Products by women to powder their perineal area.

62.     Had Ms. Farmer received a warning that using the Products would have significantly increased her risk of ovarian cancer, she would not have used such Products.

63.     Ms. Farmer 's development of ovarian cancer was the direct and proximate result of the unreasonably dangerous and defective condition of the Products, including the lack of warnings, at the time of sale and consumption; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

64.     Given the above, it is reasonable and foreseeable that all Defendants would be hauled into court in the State of Rhode Island.

65.     **Wherefore**, Plaintiffs demand judgment against Imerys Talc and the Johnson & Johnson Defendants in a fair and reasonable sum to confer jurisdiction upon this Court together with

d in Providence/Bristol County Superior Court
mitted: 3/18/2019 9:36 AM
elope: 1975261
iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 19 of 51 PageID #: 27

interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

## COUNT II
### Strict Liability
### Manufacturing Defect and Design Defect
### (Against Johnson & Johnson Defendants)

66.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

67.     At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Products into the stream of interstate commerce, including the State of Rhode Island, which they sold and distributed throughout the United States and in Providence County, Rhode Island.

68.     At all relevant times, the Products were expected to and did reach Ms. Farmer without a substantial change in condition.

69.     At all relevant times, the Products were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants in that, when the Products left the hands of the Johnson & Johnson Defendants, the foreseeable risks of the Products far outweighed the benefits associated with their design and formulation.

70.     At all relevant times, the Products were defectively manufactured and designed by the Johnson & Johnson Defendants in that the Products' design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

id in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/iewer: Lynn G.
Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 20 of 51 PageID #: 28

71.     At all relevant times, the Products created significant risks to the health and safety of consumers that far outweigh the risks posed by other Products on the market used for the same therapeutic purpose.

72.     At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the Products.  Despite knowledge of this reasonable and safer alternative design, the Johnson & Johnson Defendants failed to alter the Products' design and formulation.  The magnitude of the danger created by the Products far outweighs the costs associated with using an alternative, safer design.

73.     As a direct and proximate result of the defective design and manufacture of the Products, Ms. Farmer developed ovarian cancer and has been injured catastrophically and has been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, and losses of care, comfort, and economic damages.

74.     Given the above, and given the Johnson & Johnson Defendants' significant contacts with the State of Rhode Island, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be hauled into court in the State of Rhode Island.

75.     **Wherefore**, Plaintiffs demand judgment against the Johnson & Johnson Defendants in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

**COUNT III**
**Strict Liability**
**Design Defect and Manufacturing Defect**
**(Against Imerys Talc)**

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 1:36 AM
/elope: 1975261
/iewer: Lynn G.

1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 21 of 51 PageID #: 29

76.    Plaintiff incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

77.    At all relevant times, Defendant Imerys Talc was engaged in the business of mining and distributing talc to Johnson & Johnson Defendants for use in the Products, and Imerys was knowingly an integral part of the overall manufacture, design, and production of the Products and the introduction of such Products into the stream of interstate commerce, including the State of Rhode Island.

78.    At all relevant times, the Products were expected to and did reach Ms. Farmer without a substantial change in their condition.

79.    At all relevant times, the Products were defectively and improperly manufactured and designed by Imerys Talc in that, when Imerys Talc supplied its talc product to Johnson & Johnson with full knowledge that Johnson & Johnson would use its talc in formulating the Products and that the talc would be the primary ingredient in the Products, the foreseeable risks of the Products far outweighed the benefits associated with the Products' design and formulation.

80.    At all relevant times, the Products were defectively manufactured and designed by Imerys Talc in that design and formulation of the Products is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

81.    At all relevant times, the Products created significant risks to the health and safety of consumers that far outweigh the risks posed by other Products on the market used for the same therapeutic purpose.

82.    As a direct and proximate result of the defective design and manufacture of the Products, Ms. Farmer developed ovarian cancer, was injured catastrophically, and was caused severe and

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
velope: 1975261
viewer: Lynn G.

1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 22 of 51 PageID #: 30

permanent pain, suffering, disability, impairment, loss of enjoyment of life and losses of care, comfort, and economic damages.

83.     Given the above, and given that Imerys Talc's dangerous talc-containing Products were regularly sold to consumers in the State of Rhode Island, it is reasonable and foreseeable that Imerys Talc would be hauled into court in the State of Rhode Island.

84.     **Wherefore,** Plaintiffs demand judgment against Imerys Talc in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

## COUNT IV
### Negligence
### (Imerys Talc)

85.     Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

86.     At all relevant times, Imerys Talc had a duty to exercise reasonable care to consumers, including Ms. Farmer, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the Products, including the Products sold to consumers in the State of Rhode Island.

87.     At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew was then being packaged and sold to consumers as the Products by the Johnson and Johnson Defendants. Further, Imerys Talc knew that consumers of the Products were using it to powder their perineal regions.

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:55 AM
/elope: 1975261
/iewer: Lynn G.

88.     At all relevant times, Imerys Talc knew or should have known, based upon scientific knowledge dating back to 1971, that the use of the Products in the perineal area significantly increases the risk of ovarian cancer.

89.     At all relevant times, Imerys Talc knew that Johnson & Johnson Defendants were not providing consumers with warnings regarding its Products and the risk of ovarian cancer posed by talc contained therein.

90.     At all relevant times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants. Imerys Talc possessed information on the carcinogenic properties of talc, including its risk of causing ovarian cancer. Imerys Talc was negligent because it knew that the talc it provided to Johnson & Johnson Defendants would be used in the Products, but they did not adequately take steps to ensure that ultimate consumers of the Products, including Ms. Farmer, received the information that Imerys Talc possessed on the carcinogenic properties of talc.

91.     As a direct and proximate result of Imerys Talc's negligence, Ms. Farmer developed ovarian cancer, and thus has been injured catastrophically and been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, and losses of care, comfort, and economic damages.

92.     Given the above, and given that Imerys Talc's dangerous talc-containing Products were regularly sold to consumers in the State of Rhode Island, it is reasonable and foreseeable that Imerys Talc would be hauled into court in the State of Rhode Island.

93.     **Wherefore**, Plaintiffs demand judgment against Imerys Talc in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from

:d in Providence/Bristol County Superior Court
>mitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

the date of judgement until paid, for court costs and such further and other relief as the Court

deems just and appropriate.

### COUNT V
### Negligence
### (Johnson & Johnson Defendants)

94.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth

herein.

95.     The Johnson & Johnson Defendants were negligent in marketing, designing,

manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the Products

in one or more of the following respects:

a.     In failing to warn Ms. Farmer  of the hazards associated with the use of the
Products;

b.     In failing to properly test its Products to determine adequacy and effectiveness or
safety measures, if any, before releasing the Products for consumer use;

c.     In failing to properly test its Products to determine the increased risk of ovarian
cancer during the normal and/or intended use of the Products;

d.     In failing to inform ultimate users, such as Ms. Farmer, as to the safe and proper
methods of handling and using the Products;

e.     In failing to remove the Products from the market when the Defendants knew or
should have known the Products were defective;

f.     In failing to instruct the ultimate users, such as Ms. Farmer, as to the methods for
reducing the type of exposure to the Products which caused increased risk in
ovarian cancer;

g.     In failing to inform the public in general, and Ms. Farmer in particular, of the
known dangers of using the Products for dusting the perineum;

h.     In failing to advise users how to prevent or reduce exposure that caused increase
risk for ovarian cancer;

i.     Marketing and labeling the Products as safe for all uses despite knowledge to the
contrary; and

Filed in Providence/Bristol County Superior Court
Submitted: 3/18/2019 11:36 AM
Envelope: 1975261
Reviewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 25 of 51 PageID #: 33

j.    In failing to act as a reasonably prudent company would given similar circumstances.

96.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

97.    As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Ms. Farmer  purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer; and Ms. Farmer was caused to incur medical bills, lost wages, and conscious pain and suffering.

98.    **Wherefore**, Plaintiffs demand judgment against the Johnson and Johnson Defendants in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

## COUNT VI
### Breach of Express Warranty
### (Johnson & Johnson Defendants)

99.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

100.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

101.    At all relevant times, the Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the Products were safe and effective for reasonably anticipated uses, including use by women in their perineal area.

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
velope: 1975261
viewer: Lynn G.
Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 26 of 51 PageID #: 34

Although the label has changed over time, the message has been the same: that the product is safe for use on women as well as babies. At least as of 2014, the baby powder label stated that "Johnson's® Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable. Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." The Johnson & Johnson Defendants instruct consumers on the product labeling to "Shake powder directly into your hand, away from the face, before smoothing onto the skin."

102.    Through other marketing, including on their website for Johnson's® Baby Powder, Defendants similarly encouraged women to use the product daily. Defendants state that Johnson's® Baby Powder "keeps skin feeling soft, fresh and comfortable. It's a classic. Johnson's® Baby Powder helps eliminate friction while keeping skin cool and comfortable. It's made of millions of tiny slippery plates that glide over each other to help reduce the irritation caused by friction." Under a heading "How to Use," the Johnson & Johnson Defendants recommend that, "For skin that feels soft, fresh and comfortable, apply Johnson's® Baby Powder close to the body, away from the face. Shake powder into your hand and smooth onto skin." Under a heading "When to Use," the Johnson & Johnson Defendants recommend that the consumer "Use anytime you want skin to feel soft, fresh and comfortable. For baby, use after every bath and diaper change." On their website for Johnson's® Baby Powder, Defendants also state the product is "Clinically proven to be safe, gentle and mild."

103.    Even more recently, in February or March of 2016, after a St. Louis Jury rendered a $72 million-dollar verdict against Johnson & Johnson, including punitive damages, Johnson & Johnson published a web page directed at consumers misleadingly assuring them of the safety of talc titled "Our Safety & Care Commitment" and touted the safety of talc, stating, *inter alia*:

d in Providence/Bristol County Superior Court
mitted: 3/18/2019 11:56 AM
relope: 1975261
iewer: Lynn G.

1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 27 of 51 PageID #: 35

a.    "Decades of Safety: Our confidence in using talc reflects more than 30 years of research by independent scientists, review boards and global authorities, which have concluded that talc can be used safely in personal care Products.  Various government agencies and other bodies also have examined talc to determine the potential for any safety risks, and none have concluded that there are safety risks.  In fact, no regulatory agency has ever required a change in labeling to reflect any safety risk from talc-powder Products."

b.    "Our Position on Talc: At Johnson & Johnson Consumer Inc., our confidence in using talc is based on a long history of safe use and more than 30 years of research by independent researchers, scientific review boards and global regulatory authorities.  Various agencies and governmental bodies have examined whether talc is a carcinogen, and none have concluded that it is.  With over 100 years of use, few ingredients have the same demonstrated performance, mildness and safety profile as cosmetic talc."

c.    "We want to assure women and caregivers who use our talc Products that numerous studies support its safety, and these include assessments by external experts in addition to our company testing.  Many research papers and epidemiology studies have specifically evaluated talc and perineal use and these studies have found talc to be safe."

104.    At all relevant times, and thereafter to present day, the Johnson & Johnson Defendants' represented that talc Products are safe for personal use, including in the perineal region.

105.    At all relevant times, the Products did not conform to these express representations because the Products cause serious injury, including ovarian cancer, when used by women in the perineal area.

106.    As a direct and proximate result of the Johnson & Johnson Defendants' breach of warranty, Ms. Farmer purchased and used the Products that directly and proximately caused her to develop ovarian cancer. Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

Filed in Providence/Bristol County Superior Court
Submitted: 3/18/2019 11:56 AM
Envelope: 1975261
Reviewer: Lynn G.

107. Given the above, and given the Johnson & Johnson Defendants' extensive contacts with the State of Rhode Island, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be hauled into court in the State of Rhode Island.

108. **Wherefore,** Plaintiffs demand judgment against the Johnson and Johnson Defendants in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

**COUNT VII**
**Breach of Implied Warranties**
**(Johnson & Johnson Defendants)**

109. Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

110. At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the Products, the Johnson & Johnson Defendants knew of the uses for which the Products were intended, including use by women in the perineal area. With this knowledge, the Johnson & Johnson Defendants impliedly warranted the Products to be of merchantable quality and safe for such use.

111. Defendants breached their implied warranties of the Products when Defendants sold the Products to Ms. Farmer because the Products were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

112. As a direct and proximate result of Defendants' breach of implied warranties, Ms. Farmer purchased and used the Products that directly and proximately caused her to develop ovarian cancer. As a result, Ms. Farmer was caused to incur medical bills, lost wages, and conscious pain and suffering.

:d in Providence/Bristol County Superior Court
>mitted: 3/18/2019 H:36 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 29 of 51 PageID #: 37

113.   Given the above and Defendants' significant contacts with the State of Rhode Island, it is reasonable and foreseeable that the Johnson & Johnson Defendants would be hauled into court in the State of Rhode Island.

114.   **Wherefore**, Plaintiffs demand judgment against the Johnson & Johnson Defendants in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

### COUNT VIII
### Civil Conspiracy
### (All Defendants)

115.   Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

116.   Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Ms. Farmer's injuries, disease, and/or illnesses by exposing the Plaintiff to harmful and dangerous Products. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Plaintiff of the opportunity of informed free choice as to whether to use the Products or to expose her to said dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the Products.

117.   In furtherance of said conspiracies, Defendants performed the following overt acts:

   a.   For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:55 AM
velope: 1975261
viewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 30 of 51 PageID #: 38

and foreseeable use of the Products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.  Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

i.  Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiff (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005 Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

ii.  The Defendants, through the TIPTF, instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

iii.  Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8,

d in Providence/Bristol County Superior Court
mitted: 3/18/2019 11:55 AM
velope: 1975261
viewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 31 of 51 PageID #: 39

1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c.    By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiff and for the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the Products.

118.    Ms. Farmer reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the Products.

119.    As a direct and proximate result of the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their Products and Ms. Farmer's reliance thereon, Plaintiff purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer; and Ms. Farmer was caused to incur medical bills, lost wages, and conscious pain and suffering.

120.    **Wherefore**, Plaintiffs demand judgment against all Defendants, each of them, in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

## COUNT IX
### Concert of Action

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:55 AM
/iewer: Lynn G.

1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 32 of 51 PageID #: 40

**(All Defendants)**

121.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

122.    At all relevant times, Imerys Talc, the Johnson & Johnson Defendants knew that the Products should contain warnings on the risk of ovarian cancer posed by women using the product to powder the perineal region, but purposefully sought to suppress such information and omit from talc based Products so as not to negatively affect sales and maintain the profits of the Johnson & Johnson Defendants and Imerys Talc.

123.    As a direct and proximate result of Defendants concerted action, Ms. Farmer  purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer; and she was caused to incur medical bills, lost wages, and conscious pain and suffering.

124.    **Wherefore,** Plaintiffs demand judgment against all Defendants, each of them, in a fair and reasonable sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgement until paid, for court costs and such further and other relief as the Court deems just and appropriate.

## COUNT X
### Fraud, Fraudulent Misrepresentation,
### And Intentional Concealment
### (Johnson & Johnson Defendants)

125.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

126.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including Ms. Farmer.

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:55 AM
velope: 1975261
viewer: Lynn G.

Case 1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 33 of 51 PageID #: 41

127.    At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts, concerning the Products, to consumers, including Ms. Farmer, with knowledge of the falsity of their misrepresentations.

128.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the Products made by the Johnson & Johnson Defendants include, but are not limited to, the following:

a.    The Johnson & Johnson Defendants falsely labeled and advertised the Products in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and, in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Ms. Farmer and the public that the Products were safe for use all over the body, including the perineal areas of women.

d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated Products, when used in the perineal area, increase the risk of ovarian cancer.

:d in Providence/Bristol County Superior Court
:mitted: 3/18/2019 11:55 AM  1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 34 of 51 PageID #: 42
/elope: 1975261
/iewer: Lynn G.

e.    The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the Products regarding the potential and actual risks of using the Products in the perineal area on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom. [9]

f.    Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for use by women to powder their perineal areas.

129.    At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public, including Ms. Farmer, and with the intent that the consumers would purchase and use the Products in the female perineal area, and Ms. Farmer did regularly apply the Products to her perineal region during a number of years.

130.    At all relevant times, the consuming public, including Ms. Farmer, would not otherwise have purchased the Products and/or applied the Products in the perineal area if they had been informed of the risks associated with the use of the Products in the perineal area.

131.    At all relevant times, Ms. Farmer relied on the Johnson & Johnson Defendants' misrepresentations concerning the safety of the Products when she purchased the Products and used them in her perineal area, and her reliance was reasonable and justified.

---

[9] Household ProductsProducts Database, Label for Johnson's Baby Powder, Original, http://householdProductsProducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
relope: 1975261
Viewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 35 of 51 PageID #: 43

132.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants'
fraudulent conduct, Ms. Farmer purchased and used the Products in her perineal area. As a direct
and proximate result of such use, Plaintiff developed ovarian cancer, and she was caused to incur
medical bills, lost wages, and conscious pain and suffering.

133.    Given the above, and given the Johnson & Johnson Defendants' significant contacts with
the State of Rhode Island, it is reasonable and foreseeable that the Johnson & Johnson
Defendants would be hauled into court in the State of Rhode Island.

134.    **Wherefore**, Plaintiffs demand judgment against the Johnson & Johnson Defendants in a
fair and reasonable sum to confer jurisdiction upon this Court together with interest on that
amount at the legal rate from the date of judgement until paid, for court costs and such further
and other relief as the Court deems just and appropriate.

## COUNT XI
### Negligent Misrepresentation
### (Against All Defendants)

135.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth
fully herein.

136.    As a direct, foreseeable and proximate result of the fraudulent conduct of the Johnson &
Johnson Defendants and Imerys Talc Ms. Farmer purchased and used the Products in her
perineal area. As a direct and proximate result of such use, Plaintiff developed ovarian cancer,
and she was caused to incur medical bills, lost wages, and conscious pain and suffering.

137.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare
community, the public, and Ms. Farmer, the truth about the Products' safety and efficacy when
used in the perineal area. However, the representations and/or omissions made by Defendants, in
fact, were false.

:d in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
velope: 1975261
viewer: Lynn G.

1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 36 of 51 PageID #: 44

138.    Defendants failed to exercise ordinary care in the representations concerning the Products while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented and/or omitted the Products' high risk of unreasonable, dangerous, adverse side effects.

139.    Defendants breached their duty in representing that the Products were safe for use in the perineal areas of women and/or omitting the known or knowable inherently dangerous, carcinogenic nature of the Products when used in the perineal area.

140.    At all relevant times, upon information and belief, the misrepresentations, omissions and concealments concerning the Products made by the Defendants include, but are not limited to, the following:

a.    The Johnson & Johnson Defendants falsely labeled and advertised the Products in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

b.    The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and, in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

ed in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

c.    The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Ms. Farmer and the public that the Products were safe for use all over the body, including the perineal areas of women.

d.    The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated Products, when used in the perineal area, increase the risk of ovarian cancer.

e.    The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the Products regarding the potential and actual risks of using the Products in the perineal area on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom. [10]

f.    Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for use by women to powder their perineal areas.

141.    At all relevant times, Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of Products, failed to disclose facts indicating that the Products were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning the Products to Ms. Farmer and/or concealed relevant facts that were known to them.

---

[10] Household ProductsProducts Database, Label for Johnson's Baby Powder, Original, http://householdProductsProducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

:d in Providence/Bristol County Superior Court
>mitted: 3/18/2019 11:55 AM
'elope: 1975261
/iewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 38 of 51 PageID #: 46

142.    At all relevant times, Ms. Farmer was not aware of the falsity of the foregoing

misrepresentations, nor was she aware that material facts concerning talc and the Products had

been concealed or omitted by Defendants.  In reasonable reliance upon the Defendants'

misrepresentations and/or omissions, Ms. Farmer was induced to and did purchase the Products

and did use the Products on her perineal area.  If the Defendants had disclosed true and accurate

material facts concerning the risks of the use of the Products, in particular the risk of developing

ovarian cancer from using the Products in the female perineal area, Ms. Farmer would not have

purchased and/or received the Products and/or used the Products in that manner.

143.    Ms. Farmer's reliance upon the Defendants' misrepresentations and/or omissions was

justified and reasonable because, among other reasons, those misrepresentations and/or

omissions were made by persons and entities in a position to know the material facts concerning

the Products and the association between the Products and the incidence of ovarian cancer, while

Ms. Farmer was not in a position to know these material facts, and because Defendants failed to

warn or otherwise provide notice to the consuming public as to the risks of the Products, thereby

inducing Ms. Farmer to use the Products in lieu of safer alternatives and in ways that created

unreasonably dangerous risks to her health. At all relevant times, the Defendants' corporate

officers, directors, and/or managing agents knew of and ratified the acts of the Defendants, as

alleged herein.

144.    As a direct and proximate result of Defendants' conduct, Ms. Farmer has been injured

and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of

life, and losses of care and comfort, and economic damages.

145.    Given the above, it is reasonable and foreseeable that the Defendants would be hauled

into court in the State of Rhode Island.

d in Providence/Bristol County Superior Court
>mitted: 3/18/2019 9:56 AM
/elope: 1975261
/iewer: Lynn G.

146.   **Wherefore,** Plaintiffs demand judgment against all Defendants in a fair and reasonable

sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate

from the date of judgement until paid, for court costs and such further and other relief as the

Court deems just and appropriate.

**COUNT XII**
**Punitive Damages**
**(All Defendants)**

147.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

148.   The Defendants have acted willfully, wantonly, recklessly, and with an evil motive in one

or more of the following ways:

a.   Defendants knew of the unreasonably high risk of ovarian cancer posed by the

Products before manufacturing, marketing, distributing and/or selling the

Products, yet purposefully proceeded with such action;

b.   Despite their knowledge of the high risk of ovarian cancer associated with the

Products, Defendants affirmatively minimized this risk through marketing and

promotional efforts and product labeling;

c.   Through the actions outlined above, Defendants expressed a reckless indifference

to the safety of users of the Products and Ms. Farmer. Defendants' conduct, as

described herein, knowing the dangers and risks of the Products, yet concealing

and/or omitting this information, in furtherance of their conspiracy and concerted

action, was outrageous because of Defendants' evil motive or a reckless

indifference to the safety of users of the Products.

:d in Providence/Bristol County Superior Court
ɔmitted: 3/18/2019 11:55 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 40 of 51 PageID #: 48

149.    As a direct and proximate result of the willful, wanton, reckless or evil motive evilly

motivated and/or reckless conduct of the Defendants, Ms. Farmer have sustained damages as set

forth above.

150.    **Wherefore,** Plaintiffs demand judgment for punitive damages against all  Defendants in

a fair and reasonable amount sufficient to punish Defendants and deter them and others from

engaging in similar conduct in the future, costs expended herein, and such further and other relief

as the Court deems just and appropriate.

## COUNT XIII
### Loss of Consortium
### (Against All Defendants)

151.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth

fully herein.

152.    At all relevant times, Ms. Farmer was married and that she continues to be married.

153.    Before suffering the injuries described herein, Ms. Farmer was able to and did perform all

the duties of a wife, including but not limited to providing comfort, care, affection,

companionship, services, society, advice, guidance, counsel, and consortium to her husband.

154.    As a direct and proximate result of one or more of those wrongful acts or omissions of

the Defendants described herein, Mr. Farmer has been deprived of the comfort, care, affection,

companionship, services, society, advice, guidance, counsel, and consortium of his spouse.

155.    **Wherefore,** Plaintiffs demand judgment against all Defendants for compensatory and

punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as

this Court deems proper.

d in Providence/Bristol County Superior Court
omitted: 3/18/2019 9:56 AM
relope: 1975261
viewer: Lynn G.

Case 1:19-cv-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 41 of 51 PageID #: 49

## DAMAGES

156.    Plaintiffs incorporate by reference all other paragraphs in this Complaint as if set forth fully herein.

157.    Plaintiffs seek judgment in their favor against all Defendants as follows:

    (a)    Judgment for Plaintiffs against Defendants;

    (b)    For medical and related expenses, according to proof;

    (c)    Pain and suffering of the Plaintiff;

    (d)    For exemplary or punitive damages, according to proof;

    (e)    For treble damages;

    (f)    Pre and post judgement interest;

    (g)    For Plaintiffs' cost of suit herein;

    (h)    For disgorgement of profits, according to proof;

    (i)    General damages;

    (j)    Reasonable and necessary attorneys' fees and other disbursements and expenses of this action; and

    (k)    For such other and further relief as this court may deem just and proper, including prejudgment interest.

**Wherefore,** Plaintiffs ask that Defendants be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendants for actual damages, pre- and post-judgment interest in the maximum amount allowed by law, costs of court, and any other relief to which Plaintiffs may be entitled.

:d in Providence/Bristol County Superior Court
:mitted: 3/18/2019 9:55 AM
'elope: 1975261
riewer: Lynn G.

Case 1:19-CV-00227-WES-LDA   Document 1-1   Filed 04/30/19   Page 42 of 51 PageID #: 50

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS**

Plaintiffs Lenel Farmer and Christopher Farmer
By Plaintiffs' Attorney,


/s/ John Deaton
John Deaton, Esq. (# 6537)
The Deaton Law Firm
450 North Broadway
East Providence, RI 02914
(401) 351-6400
(401) 351-6401 fax

id in Providence/Bristol County Superior Court
omitted: 3/18/2019 11:56 AM
/elope: 1975261
/iewer: Lynn G.

Case 1:19-CV-00227-WES-LDA    Document 1-1    Filed 04/30/19    Page 43 of 51 PageID #: 51

## CERTIFICATE OF SERVICE

I hereby certify that, on the 18th day of March 2019:

[ X ] I filed and served this document through the electronic filing system on all Defense counsel

of record. The document electronically filed and served is available for viewing and/or

downloading from the Rhode Island's Judiciary's Electronic Filing System.

/s/ Danielle Angelo

Danielle Angelo

STATE OF RHODE ISLAND                    SUPERIOR COURT
PROVIDENCE, SC.                          CIVIL ACTION NO.: 96-9999

IN RE ASBESTOS LITIGATION

## COURT-COUNSEL PROTOCOL REGARDING ASBESTOS LITIGATION

### I.    INTRODUCTION

Except as noted below, this Protocol shall apply to all pending and future cases in the

Rhode Island State Court Asbestos Personal Injury Litigation [1] hereinafter ("Asbestos

Litigation").  To the extent that the provisions of this Protocol are inconsistent with any prior

Orders of this Court, the provisions of this Protocol shall supersede inconsistent provisions of

prior orders.

This Protocol shall apply to all documents (including any exhibits or attachments to said

documents) that parties to the Asbestos Litigation are required by Rhode Island Rules of Civil

Procedure or any applicable Case Management Order to serve on counsel of record, except that it

shall not apply to service of summonses and complaints, which shall continue to be served

pursuant to Rule 5 of the Super.R.Civ.P.  In addition, nothing in this Protocol shall have any

effect on the process by which documents are filed with the Court.  The parties must continue to

file all documents in paper form with the Court according to the applicable

---

[1]    Individual Rhode Island Asbestos Litigation cases are designated as asbestos cases on the Superior Court Civil Case Cover Sheet.

Rules and Case Management Orders.  This Protocol is not intended to affect the substantive

rights of any party with respect to any document.

## II.   **ELECTRONIC SERVICE**

1.   Rule 1 of the Super.R.Civ.P. provides that the rules of civil procedure "shall be
construed to secure the just, speedy and inexpensive determination of every
action."

2.   Rule 16 of the Super.R.Civ.P. provides that the court may in its discretion direct
the attorney for the parties to appear before it to consider ". . . such other
matters as may aid in the disposition of the action.  Further, Rule 5(b)(2)(D) of
the Super.R.Civ.P. (amended 2006) provides that service of pleadings and other
papers may be made by delivering a copy by electronic means so long as the
person upon whom service is being made has consented to such service in
writing.

3.   The Court has pending before it at any given time dozens or even hundreds of
active asbestos-related claims that have been assigned to the Honorable Alice B.
Gibney.  In these cases, one (1) of three (3) law firms[2] usually represents the
plaintiffs and there are often many of the same defendants represented by many
of the same defense counsel.  Many of the pleadings, motions and discovery
served in these cases are similar or identical in all the cases.  Each case often
involves the service of hundreds of such documents.

4.   Many of the parties in all the asbestos litigation assigned to this justice have
been serving motions and discovery and amended pleadings upon each other by
email and have found this to be a speedy and inexpensive method of service.

5.   Accordingly, except as set forth in Paragraphs 6 and 7 all documents (including
exhibits or attachments to said documents) that parties to the asbestos litigation
are required by the Rhode Island Rules of Civil Procedure and any applicable
Case Management Order to serve on counsel of record, may be served
electronically via Lexis-Nexis File & Serve ("Lexis"), in Portable Document
Format (PDF) only, to all parties.  This Protocol does not affect Rule
5(b)(2)(D)(3) (amended 2006) of Super.R.Civ.P. which provides that service by
electronic means under Rule 5(b)(2)(D) is not effective if the party making
service learns that the intended service did not reach the person to be served.
Any document served electronically shall be otherwise identical to its
appearance as filed with the Court, including the signatures of parties and
counsel except as provided in Paragraph 17.  Electronic service shall be deemed
complete upon transmission unless the party making service learns that the

---

[2]    Early Ludwick & Sweeney, Motley Rice LLC, and The Deaton Law Firm.

attempted service did not reach the person to be served.  If the document served electronically requires a response and none is received within the allotted time, prior to any default, deemed admissions or other adverse consequence to the failure to respond to discovery or pleading, the serving party shall give notice of non-response (including a copy of the earlier-served document) by e-mail and by hard copy (hard copy is defined herein as first class mail, overnight delivery, hand delivery or facsimile) to the non-responding party, who shall then have ten (10) days from receipt of the hard copy to respond before being held in default or being deemed to have admitted any matter or otherwise be subject to adverse consequences from the failure to respond.  Any document transmitted via email shall certify in the Certificate of Service that a true and correct copy was electronically served to counsel of record via email list service.

6.   This Protocol does not affect the filing of papers with the Court and shall apply only to the service of documents.  Original documents must still be filed as provided by Super.R.Civ.P. 5 or any other applicable provision of law.

7.   This Protocol does not affect the manner of service of summons and complaints and third-party complaints under Super.R.Civ.P. Rules 4 and 14.  Further, this Protocol is not intended to pertain to the service of correspondence on any party other than correspondence directed to the Court.  Any party at his or her option may utilize electronic service for the service of correspondence on any party.  If a party elects not to use electronic service for the service of correspondence other than correspondence directed to the Court, he or she may utilize one or more of the following methods of service: first class mail, overnight delivery, express mail, hand delivery, facsimile, certified or registered mail, or email outside of electronic service contemplated in this Protocol.

8.   Except as provided in Paragraphs 6 and 7, all parties shall receive service solely by electronic means.  Pursuant to Rule 5 (b)(2)(D), a signed Order Authorizing Electronic Service of Documents will constitute consent by all parties to the asbestos litigation.

### III.   PROCESS FOR ELECTRONIC SERVICE OF DOCUMENTS

9.   LexisNexis File & Serve ("Lexis") shall make available to the Court (for the limited purpose of access to certain documents **not** for the purposes of filing) and to the parties in this litigation a system for providing electronic service, storage and delivery of documents ("the system").

10.   A party seeking to effectuate service of a document covered by this Protocol, shall send the document to Lexis by one of following three means of delivery:

    (a)   electronic transfer via the Internet to Lexis (the document being either a scanned executed document or a scanned image of a document);

    (b)   fax transmission; or

    (c)   via overnight mail or U.S. mail addressed to Lexis.

11.   The cost per transaction (documents including exhibits) for service via Lexis shall be $13.00 ("single transaction fee") if electronic transfer method is used. Lexis will charge an additional fee of $.30 per page if the document is faxed or mailed to Lexis for upload. Lexis shall collect the above-referenced fees in the form of an invoice sent to each firm on a monthly basis.

12.   A "transaction" is: (a) the uploading/service of document(s) and any related exhibits and attachments to the document(s) of any aggregate length in any single case; or (b) the uploading/service of document(s) and any related exhibits and attachments to the document(s) of any aggregate length in multiple cases. A multiple case service option will be available to parties for a single transaction fee, which will allow a party to add multiple captions to one single transaction for the uploading/service of document(s) and any related exhibits and attachments to the document(s).

13.   Regardless of transmission method, all document service must be initiated on the website by a registered user. Lexis shall then convert all documents into Adobe Portable Document Format (pdf) and make them available to parties on an Internet website maintained by Lexis ("the Website").

14.   Lexis shall post all documents to the Website according to the following timetable:

    (a)   Electronic documents shall be posted to the Website within one (1) hour of receipt of such document from a registered user;

    (b)   Faxed documents shall be posted to the Website within six (6) business hours of receipt from a registered user; and

4

(c)   Mailed paper copy documents shall be posted to the Website within twenty-four (24) hours of receipt of the overnight mail package.

15.   Loss of internet connectivity on the part of a user shall not extend any service or filing deadlines except as provided in the paragraph.  For any day or partial day that the Lexis system is out of service, deadlines applicable to service of documents pursuant to this Protocol shall be extended by one full business day. Where the occurrence of an event causes a loss of a user's internet connectivity or causes an inability to access the Lexis system, that user may serve opposing counsel and liaison counsel by email (outside of electronic service contemplated in this Protocol) or by "hard copy" (see paragraph 5), and upload the document to the Lexis system once internet connectivity is reestablished.  Moreover, in the event that the Lexis system service is not functioning for more than one day, a party may serve opposing counsel and liaison counsel by email (outside of electronic service contemplated in this Protocol) or by "hard copy" (see paragraph 5) and then through the Lexis service once such service is functioning.

16.   Lexis shall maintain a "Single Case" docket for service in an individual case, and an "All Cases Docket" (also known as "In Re: Asbestos Litigation Docket," Docket No.: 96-9999) for documents filed on the Rhode Island Asbestos Litigation Consolidated Docket.  Case-specific documents shall be posted to the "Single Case" docket, not the "All Cases Docket."

17.   Documents posted on Lexis need not contain visual representations of the filing attorneys' signatures.  Where it is not possible for the attorney to insert an original signature, attorneys shall (in place of a signature and where the signature would normally appear) place the following declaration: "Original Signature on File."  Original documents filed with the Court must contain original signatures in conformance with the Rhode Island Rules of Civil Procedure.

18.   Access to the Lexis system shall be limited to registered users.  Registered users shall consist of Court personnel as authorized by the Justice responsible for such asbestos litigation and counsel of record or their designees within their law firms.  Lexis shall provide each registered user with a username and password to access the system.  Lexis personnel shall perform all administrative functions for the system, except that registered users may use the "Case Management" function to adjust their mappings (i.e. add or delete registered users who receive electronic notification in any given case).

19.   Any document electronically served pursuant to this Protocol shall be deemed served as of the date and time it is transmitted to Lexis.  Any document transmitted to the system shall certify in the Certificate of Service that a true and correct copy was electronically served to counsel of record via Lexis.  A

document is deemed to have been served via the Lexis system on a given date so long as it is served via the Lexis system no later than 11:59 p.m. Eastern Time on such date. Documents served via the Lexis system after 11:59 p.m. Eastern Time on a given date will be deemed served the next business date.

20. Instructions for use of the Lexis system shall be posted on the Lexis Main Menu, which is displayed each time a user logs onto Lexis.

21. Unless ordered by the Court, no documents that are filed under seal ("sealed documents") shall be served via the system. Rather, service of sealed documents shall be made pursuant to Rule 3.3 of the Superior Court Rules of Procedure.

## IV. ADDITION OF NEW CASES OR NEW PARTIES TO THE SYSTEM/ RESPONSIBILITIES OF PARTIES

**Plaintiffs' counsel responsibilities:**

22. For each new case filed on or after this Protocol, Plaintiffs' counsel shall, within forty-eight (48) hours of filing the complaint; (a) contact Lexis to initiate the electronic case docket or initiate it directly on the system, and (b) contact Lexis to map to the case docket all defendants (who have a registered user) named in the case.

**Defense counsel responsibilities:**

23. Defense counsel must designate one user within their law firm who will be responsible for receiving service on behalf of their defendant. It shall be responsibility of each individual defense counsel/firm to map any additional users whom they wish to receive service for any defendant(s) by utilizing the Case Management functions on the Lexis system. See also Paragraph 24 regarding the addition of new parties. Once an additional user is mapped to a defendant, that user will be automatically mapped to every existing or new case in which that defendant is named.

**Joint plaintiffs' counsel/defense counsel responsibilities:**

24. When a party serves a motion or pleading seeking to add new parties to a case, the serving party shall, within forty-eight (48) hours of serving the motion or pleading, request that Lexis map to the case docket all parties (who have a registered user) sought to be added. If a party sought to be added does not have a registered user, the moving party shall serve the motion pursuant to Rule 5 of the Super.R.Civ.P.

6

25.   When a new party to the asbestos litigation is named or added in a case, the party seeking to name or add the new party shall serve a copy of this Protocol upon the new party simultaneously. New parties that are not added to a case by an existing party, will be provided with a copy of this Protocol by Defendants' liaison counsel after counsel for such party has entered an appearance in the case. All new parties shall, within twenty (20) days of receipt of service of this Protocol, contact Defendants' liaison counsel to provide the appropriate contact information and to designate registered users to receive service on behalf of the new defendant for the service. All subsequent service to that party shall be made electronically in accordance with the provisions above, except as otherwise stated in paragraphs 6 and 7.

## V.   IMPLEMENTATION OF LEXIS NEXIS

26.   Implementation of the Lexis system shall take place forty-five (45) days within the Court's execution of this Protocol.

BY ORDER:

_Denise Mitchell_
_Deputy Clerk_

ENTER:

_____

DATE:

_____
1/9/08

7

SUBMITTED BY:

_____
Stephen T. Armato#6395
Cetrulo & Capone LLP
321 South Main Street
Providence, RI 02903
Telephone: 401-274-7850
Facsimile: 401-274-9670

_____
Jennifer A. Whelan #6952
McGivney & Kluger, P.C.
72 Pine Street
Providence, RI 02903
Telephone: 401-272-5300
Facsimile: 401-331-7454

8

721397v1